WOODS, Executrix, Respondent, vs. STANDARD ACCIDENT INSURANCE COMPANY, Appellant.

*December 6, 1917—January 5, 1918.*

*Accident insurance: Drowning of passenger on ship sunk by torpedo: Injuries effected by "accidental means:" Not received from "firearms" or "explosives," nor "inflicted by any other person."*

The insured under an accident policy, being a passenger on a steamship which was sunk in the Atlantic by a torpedo from a submarine, was not injured by the explosion of the torpedo but came to his death by drowning, his body, fully dressed and with a life-preserver on, being afterwards found on the coast of Ireland. *Held,* that the injuries causing his death were effected by "external, violent, and accidental means," within the meaning of the policy, and were not received "from firearms of any kind or from explosives," and were not inflicted upon him by "any other person."

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

The plaintiff, executrix of the will of Dr. Edmund F. Woods, deceased, brings this action to recover for the death of Dr. Woods, who had a policy of accident insurance in defendant company, upon the ground that he died from injuries effected solely by external, violent, and accidental means

which caused his immediate death. The answer admits that the defendant carried said insurance policy and sets up various defenses, and specifically alleges that the occurrence falls within certain exceptions to liability stated in the contract of insurance.

The facts are substantially undisputed and were stipulated upon the trial. Dr. Woods was a passenger upon the steamship Arabic, which sailed from Liverpool, England, for New York on August 18, 1915; that said steamship Arabic was an unarmed passenger and mail boat, flying the English flag, and plying between the cities of New York and Liverpool, England; that said Arabic, while proceeding through the Atlantic ocean and about sixty miles off the southwest coast of Ireland, was fired upon by a submarine with the purpose and intention of sinking said ship, said torpedo being fired with hostile intent and without notice or warning to the officers of said Arabic or any one aboard of her; that the torpedo discharged at the Arabic struck below the water line and exploded, causing said Arabic to sink within six minutes after being struck; that the effect of the tearing and breaking upon said steamship Arabic caused by the explosion of the torpedo was below the decks of said steamship occupied by passengers; that shortly thereafter most of the passengers and crew were put into life-boats and left the sinking ship; that one life-boat containing some of the passengers and crew did not get loose from said steamship and was sucked under or thrown into the water when the ship sank. The Arabic after leaving Liverpool did not stop at any point prior to the time when it was struck by the torpedo. Sometime thereafter the body of said Woods was found on the southwest coast of Ireland with a life-preserver on, the body fully dressed, and upon the clothing on said body were papers, a watch, and other jewelry belonging to said Woods. A state of war at said time and for sometime prior to said 18th day of August, 1915, existed and still exists between Germany,

Austria, and other countries on the one side, and Great Britain (including England) and other countries on the other.

The insuring clause of the contract in suit reads as follows:

The *Standard Accident Insurance Company* "hereby insures the individual who purchases this ticket in person, against the effects of bodily injuries received during the term of this insurance and effected solely by external, violent, and accidental means, subject to all the conditions and limitations hereinafter contained."

Under the title "Additional Provisions," subdivision "F," appears the following:

"This ticket is issued by the company and accepted by the insured with the understanding and agreement that no benefits will be paid for injuries, resulting fatally or otherwise, received under or in consequence of any of the following conditions: . . . (3) While engaged in aerial navigation, hunting, fishing, or on exploring expeditions, or under any circumstances from firearms of any kind or from explosives; or (4) from wrestling, lifting, racing, or competitive games, or when inflicted upon the insured by himself or any other person, or received by the insured while insane or inflicted by the insured upon himself while insane."

The case was tried by the court, and the court found that the plaintiff was entitled to recover.

Judgment was entered accordingly in favor of the plaintiff and against the defendant, from which this appeal was taken.

For the appellant there was a brief signed by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Willet M. Spooner.*

For the respondent there was a brief by *Jeffris, Mouat, Oestreich & Avery* of Janesville, and oral argument by *O. A. Oestreich* and *M. G. Jeffris.*

Kerwin, J. It is contended on the part of the appellant that the killing of Mr. Woods by the discharge of the torpedo

falls within the excepted provisions of the policy referred to in the statement of facts.

It is argued that the accident falls within the provision of the policy which excepts injuries, resulting fatally or otherwise, under any circumstances from firearms of any kind or other explosives, and it is contended that the death of Mr. Woods brings the case under subdivision "F" of the policy, which provides ". . . or under any circumstances from firearms of any kind or from explosives," and where the injury is inflicted upon the insured by "any other person."

We are satisfied upon the conceded facts that the contention of appellant cannot be sustained. It was found by the court below that deceased came to his death by drowning, and we think this finding is amply supported by the evidence. Whether he escaped from the ship and was subsequently drowned or was pulled under the vessel as one of the occupants of the last life-boat does not appear, but it is quite clear from the evidence that he was not killed or injured by the explosion of the torpedo, therefore the explosion was not the direct cause of his death. It quite conclusively appears that he did not go down with the ship, so it follows that he must have come to his death by "external, violent, and accidental means" within the meaning of the policy, not by the explosion.

It being established that the deceased came to his death by drowning, the drowning was either accidental or suicidal, and it cannot be said to be suicidal under the facts of this case, because the law is well settled that there is a presumption against suicide, hence the conclusion must follow from the established fact that the cause of the drowning was accidental.

If, as the proof here warrants, Mr. Woods had gotten into one of the life-boats that arrived safely he would not have lost his life. Nor does the fact that he lost his life by being drowned after the explosion bring the accident within the

exception in the policy referred to. The fair inference to be drawn from the evidence is that after the Arabic was struck Mr. Woods adjusted upon himself a life-preserver, got into a life-boat, and by some accident thereafter was drowned. There is no evidence that he was injured by contact with any explosive or any object displaced or put in motion by the explosive. No inference can be drawn that the injury which caused the death of Mr. Woods was inflicted upon him by himself or by any other person.

It may well be that had no explosion occurred which resulted in sinking the Arabic Mr. Woods would not have lost his life, but it cannot be said under the circumstances of the case that the explosion was the direct cause of his death within the meaning of the exception in the policy. In order to escape liability under the policy it must appear that the explosion was the direct cause of the injury to the insured.

We do not regard it necessary to discuss authorities referred to in appellant's brief. It is sufficient to say that they are not applicable to the situation here. The material facts in the instant case are undisputed, and upon these facts we think the judgment of the court below was right and should be affirmed.

*By the Court.*—Judgment affirmed.